**The below described is SIGNED.**

**Dated: April 02, 2009**

_____
**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**



---

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>FIRSTLINE SECURITY, INC.,<br><br>Debtor. | Bankruptcy Number: 08-20418<br><br>Chapter 11 |
| FIRSTLINE SECURITY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALARM.COM INCORPORATED,<br><br>Defendant. | Adversary Proceeding No. 08-2245<br><br>Judge Judith A. Boulden |

**MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART
ALARM.COM INCORPORATED'S MOTION TO DISMISS FIRSTLINE SECURITY,
INC.'S COMPLAINT, AND STAYING ADVERSARY PROCEEDING**

Before the Court is Alarm.com Incorporated's Motion to Dismiss Firstline Security, Inc.'s Complaint (Motion) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012. The Complaint consists of three declaratory judgment claims for relief under 28 U.S.C. § 2201, but they boil down to one central argument asserting that Alarm.com is improperly attempting to

leverage payment of its prepetition debt through a variety of means and is therefore violating the automatic stay imposed by § 362 of the Bankruptcy Code.[1] Alarm.com's central response is that it seeks only what is allowed to it under § 365 as counterparty to an executory contract with Firstline. Viewed broadly, the dispute in this adversary proceeding as well as the main bankruptcy case is one of timing — namely, which party can do what first.

The Court has thoroughly reviewed the pleadings, considered the arguments of counsel, and conducted an independent inquiry into applicable case law. Now being fully advised, the Court hereby issues the following Memorandum Decision.

## I. FACTS

As stated in the Complaint, Firstline has been in the business of selling residential alarm systems primarily through door-to-door solicitations since approximately 2003. Alarm.com develops and sells products (Alarm.com Products) and services (Alarm.com Services) that permit and provide for the wireless transmission of communication signals between an alarm system and a central-station monitoring company. Alarm.com Products are integrated into alarm system control panels that are installed by authorized Alarm.com dealers when those dealers sell alarm systems to customers. These Alarm.com Products also contain imbedded, proprietary software that only allows Alarm.com to provide wireless transmission services to alarm systems containing Alarm.com Products.

On May 12, 2004, Firstline entered into an Alarm.com Dealer Agreement (Dealer Agreement) with Alarm.com which authorized Firstline, as an independent contractor, to sell Alarm.com Products and to sign up customers for Alarm.com Services under the terms of

---

[1] Future statutory references are to title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), unless otherwise noted.

subscription agreements (Subscription Agreements) between Alarm.com and Firstline customers (Subscribers).[2] Under the authorization granted by the Dealer Agreement, Firstline entered into its own agreements with its customers (Customer Accounts) that require its customers to pay to Firstline a one-time activation fee and a recurring monthly fee which covers the costs of an equipment package, a limited warranty, ongoing central-station monitoring, and, if the Firstline customer is also a Subscriber, a fee of approximately $4.95 for ongoing Alarm.com Services. In turn, Firstline is obligated to pay that Alarm.com Services fee to Alarm.com and to provide customer service and technical support for the associated Subscribers.

    Historically, Firstline generated Customer Accounts during the summer months then sold most of those Customer Accounts to third-party purchasers to finance its business operations. In connection with the sale of Customer Accounts where the Firstline customer is also a Subscriber, Alarm.com requires two things. First, it requires third-party Customer Accounts purchasers (Dealer Programs) to enter into Dealer Program Agreements with Alarm.com. Under the Dealer Program Agreement, a Dealer Program agrees to pay Alarm.com a monthly service charge for all acquired Customer Accounts and to provide customer service and technical support for the associated Subscribers. Second, because Alarm.com controls from whom a Dealer Program may receive assignments of Customer Accounts, the assigning Alarm.com dealer must have received Alarm.com's consent and must be "in good standing with Alarm.com under the terms of their

---

[2] Neither party disputes that the Dealer Agreement is an executory contract that must, at some point, be either assumed or rejected pursuant to § 365. Alarm.com has filed a Motion for Relief from Stay or, Alternatively, for Order Compelling Debtor Promptly to Assume or Reject Executory Contract in the main bankruptcy case that is set for evidentiary hearing on May 11, 2009. A previous stay relief motion filed by Alarm.com early in the case was denied without prejudice in April 2008.

Alarm.com Dealer Agreement (including with respect to the payment of amounts due under such agreements)."[3]

The primary asset of the Firstline bankruptcy estate is approximately 11,088 Customer Accounts, most or all of which were generated in 2007. Firstline's total debt to Alarm.com as of the petition date was over $4 million, but Firstline has remained current on its obligations to Alarm.com postpetition. Firstline also alleges that it "has undertaken significant efforts to sell all, or the majority, of its existing Customer Accounts to third-party purchasers" during the bankruptcy case,[4] although the Complaint gives no specifics apart from allegations that McGinn Smith Alarm Trading, LLC (McGinn Smith) meets Alarm.com's minimum qualifications to be a Dealer Program and "desires to become a Dealer Program to facilitate its purchase of Customer Accounts from Firstline and has inquired of, and requested application forms from, Alarm.com in the furtherance thereof."[5] Firstline alleges that its efforts to sell its Customer Accounts have been thwarted by Alarm.com's restrictions on who qualifies as Dealer Programs, Alarm.com's untenable legal positions with respect to the conditions that must be met before Alarm.com consents to any sale of Customer Accounts, and Alarm.com's potential termination of Alarm.com Services to customers under the Subscription Agreements based on Firstline's non-payment of its prepetition debt to Alarm.com.

---

[3]     Cmplt. at ¶ 27. The Dealer Program Agreement also incorporates the terms of a Dealer Program Dealer Agreement which, unlike the Dealer Agreement, the Dealer Program Agreement, and the Subscription Agreement, is not attached to the Complaint.

[4]     *Id.* at ¶ 21.

[5]     *Id.* at ¶ 34-5.

## II. DISCUSSION

### A.  Rule 12(b)(6)

Under the old standard for motions to dismiss under Rule 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."[6]  Now, however, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," which requires the plaintiff to "nudge[] [its] claims across the line from conceivable to plausible."[7]  The Tenth Circuit has indicated that the trial courts "should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief"[8] and "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."[9]  The Court must also "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."[10]

As stated before, the crux of the Complaint involves Alarm.com's alleged improper attempts at leveraging payment of its prepetition debt which, in Firstline's view, constitute violations of the automatic stay.  In its First Claim for Relief, Firstline seeks a declaration that

---

[6]   *Caprin v. Simon Transp. Servs.*, 112 F.Supp.2d 1251, 1254-55 (D. Utah 2000).

[7]   *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 127 S.Ct. 1955, 1974 (2007).

[8]   *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).

[9]   *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

[10]   *Alvarado*, 493 F.3d at 1215.  The Court also notes that, although it has considered the exhibits attached to the Complaint, this consideration does not require that the Court treat the Motion as a motion for summary judgment under Rule 12(d).  The contents of those attachments were referenced in the Complaint, the parties' papers, and the oral arguments and will be treated as part of the Complaint. *See, e.g.*, *Pryor v. NCAA*, 288 F.3d 548, 559-60 (3d Cir. 2002).

any provisions in the Dealer Program Agreement that allow Alarm.com to condition Firstline's sale of Customer Accounts on the assumption and cure of the Dealer Agreement or other payment of Alarm.com's prepetition debt are void and unenforceable.  Firstline's Second Claim for Relief seeks a declaration that Alarm.com's delay in consideration and "prospective denial" of McGinn Smith's application to become a Dealer Program constitute stay violations as efforts to exercise control over Firstline's Customer Accounts by preventing their sale to McGinn Smith.  Similarly, Firstline's Third Claim for Relief seeks a declaration that any actual or prospective termination by Alarm.com of a Subscription Agreement with a Firstline customer that relates to non-payment of Alarm.com's prepetition debt is a stay violation.

The heart of Alarm.com's Motion is that the Dealer Agreement must be assumed and assigned to any Dealer Program before a sale and transfer of Customer Accounts is permitted.  Therefore, Alarm.com is not improperly trying to collect a prepetition debt under § 362(a)(1) or to exercise control over estate property under § 362(a)(3).  Instead, Alarm.com is merely insisting that Firstline cure its prepetition default of the executory Dealer Agreement, assumption and assignment of which is a precondition of selling and transferring Customer Accounts, as required by § 365(b).  In the context of this Motion and based on the explicit terms of the Dealer Agreement and Dealer Program Agreement, this line of argument fails.

The problem for Alarm.com is that the Dealer Agreement and Dealer Program Agreement contain a host of apparently inconsistent terms.  For example, while Alarm.com argues that ¶¶ 2.1(b) and (d) of the Dealer Program Agreement suggest that Firstline would have to transfer its interests in the Dealer Agreement to the Dealer Program before a sale and transfer of Customer Accounts could occur, ¶ 3.1 explicitly states that Alarm.com's relationship with its Dealer Programs will be governed "exclusively" by what is called a Dealer Program Dealer

Agreement after the transfer date of Customer Accounts. Firstline therefore argues from the documents that any assignment language is "illusory." Alarm.com argues that the reference to a Dealer Program Dealer Agreement throughout the Dealer Program Agreement is merely a typographical error. At the very least, the Court has thoroughly reviewed the contents of the Complaint and its attachments and can make no determination as to the legal effect of the documents from within their four corners. Drawing all reasonable inferences in favor of Firstline, the Complaint states a plausible case under the First Claim for Relief that neither assumption nor assignment of the Dealer Agreement is a contractual precondition to the sale and transfer of Customer Accounts.

Viewed in that light, the Complaint therefore also states a plausible case for violations of the automatic stay under the Second and Third Claims for Relief. Alarm.com argues that the Complaint fails to state a claim because it seeks determinations as to contracts to which Firstline is not a party. Alarm.com is correct that Firstline is only a party to the Dealer Agreement. Alarm.com and Firstline customers are the relevant parties to the Subscription Agreements, and Alarm.com and Dealer Programs are the relevant parties to the Dealer Program Agreements and, plausibly, to the Dealer Program Dealer Agreements. As an initial matter, the Court finds it curious that Alarm.com challenges Firstline's use of the language in these other agreements while Alarm.com uses the same language, particularly in the Dealer Program Agreement, against Firstline as the basis for Firstline's allegedly required assumption and assignment of the executory Dealer Agreement before sale and transfer of the Customer Accounts is permitted. But at any rate, the Complaint alleges stay violations by Alarm.com, and "[t]he scope of the automatic stay is extremely broad . . . . Thus, even indirect attempts at collection, such as

withholding of a student's transcripts until a pre-petition debt is paid, is a violation of the stay."[11]

If Firstline can prove that Alarm.com's actions with respect to third parties such as McGinn Smith or Firstline customers are effectively indirect attempts at prepetition debt collection or exercising control over estate property, then stay violations may have occurred and the Complaint sets forth sufficient facts to plausibly support such claims for relief.[12]

Accordingly, the Motion as to Rule 12(b)(6) for failure to state a claim is denied as to all three Claims for Relief.

**B.    Waiver/Estoppel**

As an alternative request in the Third Claim for Relief, Firstline seeks a declaration that Alarm.com has waived or should be estopped from exercising any contractual rights under the Subscription Agreements to terminate service to Firstline customers based on Firstline's unpaid obligations to Alarm.com. Firstline does not set forth the elements of waiver or estoppel that must be met, does not allege the appropriate governing law,[13] and provides no factual basis for these alternative theories of relief. Even under the liberal notice pleading standards of Rule 8

---

[11]    *In re A & C Elec. Co., Inc.*, 188 B.R. 975, 980 (Bankr. N.D. Ill. 1995), *aff'd Divane v. A & C Elec. Co., Inc.*, 193 B.R. 856 (N.D. Ill. 1996) (internal citations omitted).

[12]    The Court also recognizes Alarm.com's arguments that the Lanham Act restricts assignment of the intellectual property license granted by Alarm.com to Firstline in the Dealer Agreement and that Alarm.com has complete discretion over who it chooses to authorize as a Dealer Program. Firstline apparently does not contest either of these points at this time, nor is it required to do so. Again, if the Dealer Agreement does not need to be assumed and assigned because other operative agreements govern the relationship between Alarm.com and Dealer Programs, including with respect to intellectual property licenses, then the Lanham Act argument is moot. And if Firstline can prove that Alarm.com violated the stay, even by indirect means, then Alarm.com cannot simply rely on its discretion to choose Dealer Programs as an absolute defense.

[13]    The Court notes that the Dealer Agreement and Subscription Agreement appear to be governed by the substantive law of Virginia, while a document known as the Alarm.com Terms appears to be governed by California law. The Dealer Program Agreement's governing law is unclear because it merely incorporates by reference the choice of law provisions from the Dealer Program Dealer Agreement, which is not currently before the Court.

which require only "a short and plain statement of the claim showing that the pleader is entitled to relief,"[14] the waiver and estoppel aspects of the Third Claim for Relief are insufficient and must therefore be dismissed.[15]

At oral argument on the Motion, Firstline's counsel argued that simply because Alarm.com has not yet shut off service to Firstline's customers despite its apparent contractual right under the Subscription Agreements to do so and because Firstline is current with Alarm.com postpetition, Alarm.com should be prohibited based on waiver or estoppel from turning off service to Firstline customers in the future. This argument is particularly curious in light of the fact that the rest of the Complaint alleges multiple stay violations by Alarm.com. But even if the Court were to consider these extraneous arguments outside the well-pleaded factual averments in the Complaint, the argument does not plausibly support a claim for relief under the *Twombly* standard.

Accordingly, the Motion is granted as to the waiver and estoppel aspects of the Third Claims for Relief.

## C. Rule 12(b)(1)

Finally, Alarm.com also argues for dismissal under Rule 12(b)(1) on two grounds — that the Court has no jurisdiction to render relief in connection with contracts to which Firstline is not a party, and that the case or controversy requirements of Article III of the Constitution and the Declaratory Judgment Act have not been met. "[A] declaratory judgment suit must be 'definite

---

[14] FED. R. CIV. P. 8(a)(2).

[15] *See Twombly*, 127 S.Ct. at 1964-5 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted); *see also Bryson v. Gonzales*, 534 F.3d 1282, 1286-87 (10th Cir. 2008).

and concrete, touching the legal relations of parties having adverse legal interests,' must be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' Put differently, 'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"[16]

The Court has already addressed the arguments in the context of Rule 12(b)(6) and finds them equally without merit under Rule 12(b)(1). On the issue of jurisdiction over third-party contracts, the Complaint plausibly alleges violations of the automatic stay by Alarm.com, and even indirect attempts at collecting prepetition debts or exercising control over estate property may be actionable in appropriate circumstances.[17] Likewise, stay violation determinations are certainly within this Court's core jurisdiction, and resolution of the parties' ongoing dispute over their rights and obligations under the Dealer Agreement are real and substantial, admit of specific relief through a decree of conclusive character, and are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Accordingly, the Motion as to Rule 12(b)(1) for lack of jurisdiction is denied as to all three Claims for Relief.

---

[16] *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008) (internal citations omitted).

[17] The Court is wary of the suggestion in the First Claim for Relief that the Court should declare provisions in the Dealer Program Agreement "void," but the First Claim for Relief is unobjectionable when viewed broadly as a challenge to assumption and cure of the Dealer Agreement as being required before Customer Accounts may be sold and transferred.

**D.     Declaratory Judgment Act**

Having found that this Court has jurisdiction over the Complaint and that the Motion should be denied in almost all respects, the Court must still determine whether to exercise its jurisdiction under 28 U.S.C. § 2201, the Declaratory Judgment Act.  The Declaratory Judgment Act provides that the Court, "[i]n a case of actual controversy within its jurisdiction, . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[18]  Once the case or controversy requirements of Article III and the Declaratory Judgment Act are met, the Court must then consider several factors to determine whether to exercise its discretion to entertain the action.  These factors include "[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective."[19]

Although the third and fourth factors are irrelevant to this action, the other factors weigh in favor of staying this adversary proceeding until resolution of the Motion for Relief from Stay or, Alternatively, for Order Compelling Debtor Promptly to Assume or Reject Executory Contract in the main bankruptcy case that is set for evidentiary hearing on May 11, 2009.  The declaratory action would serve a useful purpose in clarifying the legal relations between the

---

[18]     28 U.S.C. § 2201(a) (emphasis added).

[19]     *Surefoot*, 531 F.3d at 1248 (10th Cir. 2008) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

parties, but it would not fully resolve their disputes. Most importantly, whether Alarm.com or Firstline is successful in the adversary proceeding, Firstline would still have to make a further decision to either assume or reject the Dealer Agreement including possible issues as to the required statutory cure amount. Thus, while the second factor weighs in favor of entertaining the declaratory action at this time, the first factor does not.

The Court has already taken evidence and heard argument on Alarm.com's first stay relief motion in April 2008, and the new Motion for Relief is set for hearing on May 11, 2009. The parties have agreed to a detailed scheduling order in connection with the May 11 hearing and have worked out an expedited discovery schedule in connection with that hearing. With this structure already in place, doing additional discovery in this adversary proceeding toward the goal of resolving many or even all of the same issues that may be resolved in connection with the Motion for Relief seems inappropriate at this time. Thus, the fifth factor weighs strongly in favor of the Court declining to entertain the declaratory action, at least at this time.

Should either of the parties believe that the Court's resolution of the Motion for Relief does not address all of the remaining causes of action in this adversary proceeding, it may file an appropriate motion to vacate the stay of the adversary proceeding within 10 days of the Court's resolution of the Motion for Relief.

### III. CONCLUSION

This adversary proceeding presents several layers of novel issues and complexity, but the ultimate question in both this adversary proceeding and the entire bankruptcy case involves whether Firstline must assume and assign its Dealer Agreement with Alarm.com to an authorized Dealer Program before it can sell and transfer Customer Accounts.  In the context of this Motion, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of Firstline.  For the reasons set forth above, the Court finds that the Complaint is plausible on its face as to all three Claims for Relief except the waiver and estoppel alternatives of the Third Claim for Relief and that the Court has jurisdiction under Article III of the Constitution and the Declaratory Judgment Act to entertain those claims.

However, the Court has considered the discretionary factors in *Surefoot* and *Mhoon* and has determined that this adversary proceeding should be stayed until resolution of the Motion for Relief set for evidentiary hearing in the main bankruptcy case on May 11, 2009.  Should either of the parties believe that the Court's resolution of the Motion for Relief does not address all of the remaining causes of action in this adversary proceeding, it may file an appropriate motion to vacate the stay of the adversary proceeding within 10 days of such resolution.  A separate order will be issued in conjunction with this Memorandum Decision.



----------------------------------------END OF DOCUMENT-----------------------------------------

\_\_\_\_\_ooo0ooo\_\_\_\_\_
## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART ALARM.COM INCORPORATED'S MOTION TO DISMISS FIRSTLINE SECURITY, INC.'S COMPLAINT, AND STAYING ADVERSARY PROCEEDING** will be effected through the Bankruptcy Noticing Center to each party listed below.

Adam S. Affleck
Andrew B. Clawson
**Prince Yeates & Geldzahler**
City Center 1, Ste. 900
175 East 400 South
Salt Lake City, UT 84111
    *Counsel for Plaintiff*

Annette W. Jarvis
Benjamin J. Kotter
**Dorsey & Whitney, LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1655
    *Counsel for Defendant*

J. Thomas Beckett
**Parsons Behle & Latimer**
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, UT 84145-0898
    *Counsel for Unsecured Creditors' Committee*

Jeffrey Weston Shields
**Jones Waldo Holbrook & McDonough PC**
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
    *Counsel for McGinn Smith & Company*

Adelaide Maudsley
**Chapman and Cutler LLP**
201 South Main Street, Suite 2000
Salt Lake City, UT 84111
    *Counsel for ADT Security Services, Inc.*

United States Trustee
Ken Garff Bldg.
405 South Main Street, Suite 300
Salt Lake City, UT 84111